UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: MONARCHY RANCHEROS DE SANTA FE, LLC, a Nevada limited liability company,

Debtor.

No. 25-10691-j11

**MEMORANDUM OPINION REGARDING
MOTION TO DISMISS FOR LACK OF AUTHORITY TO FILE**

The Court held a final evidentiary hearing on July 25, 2025, on the Motion to Dismiss for Lack of Authority to File ("Motion to Dismiss" – Doc. 103) filed by the United States Trustee ("UST"), and took the matter under advisement. Having reviewed the evidence, and being otherwise sufficiently informed, the Court finds that Monarchy Rancheros de Santa Fe, LLC ("Debtor") did not demonstrate that it had the authority to file a voluntary petition for relief under the Bankruptcy Code. Its post-petition efforts to establish the requisite authority also failed. Because the Debtor lacked authority to file its chapter 11 case, the Court will dismiss this bankruptcy case without prejudice to refiling.

FACTS[1]

Debtor commenced this chapter 11 case on June 5, 2025, by filing a voluntary petition under chapter 11 of the Bankruptcy Code.[2] Daniel Galvan in his individual capacity signed the petition on behalf of Debtor as its "Authorized Member."[3] Daniel Galvan is not an authorized member of Debtor.

---

[1] The following exhibits were admitted without objection: UST-1, UST-2, UST-3, UST-4, UST-5, UST-6, UST-7, UST-8, UST-9, UST-10, UST-11, UST-12, UST-13, UST-14, UST-15, UST-16, UST-17, UST-18, UST-19, UST-20, UST-21, UST-22, UST-23. With the consent of the parties, the Court took judicial notice of the docket and documents filed of record in the bankruptcy case, the claims register, and the proofs of claim filed in the claims register.
[2] UST-1.
[3] *Id*.

Debtor is a limited liability company organized in the state of Nevada. Debtor's Operating Agreement purports to appoint Monarchy Rancheros Manager, LLC ("Monarchy Manager") as Debtor's manager.[4] Monarchy Manager is the sole Class B member of Debtor identified in the Operating Agreement, holding a 60% interest in Debtor.[5] Per the Operating Agreement, Monarchy Manger "has all of the management and voting rights" of the Debtor.[6]

Debtor has not demonstrated that the Operating Agreement was duly authorized and is effective. The Operating Agreement is undated.[7] The signature blocks in the Operating Agreement identify the following signatories: 1) Monarchy Manager, as Class B Member of the Debtor; 2) Debtor, by its manager, Monarchy Manager; and 3) Monarchy Manger, as manager. Above each of the signature lines it states that Gene Chavez signed on behalf of Monarchy Manager.[8] Each "signature" is typed, not handwritten, and there is no evidence that the Operating Agreement was actually signed.

*Debtor's Equity Security Holders*

Debtor's List of Equity Security Holders filed June 20, 2025,[9] identifies the following entities as equity security members of the Debtor, with the following interests:

| | |
|---|---|
| Trinity Solutions Group, LLC | Shareholder 30% |
| Beyond Base Equity, LLC | Shareholder 2% |
| Galvan Capital, LLC | Shareholder 31.6% |
| Happy Investments 168, LLC | Shareholder 13.6% |
| ERC Investments, LLC | Shareholder 1.6% |
| Specialized Trust Company | Shareholder 1.4% |
| 736 Old Las Vegas, LLC | Shareholder 18% |
| Northgate Land Partners, LLC | Shareholder 1.6% |

---

[4] UST -19 - Operating Agreement of Monarchy Rancheros de Santa Fe, LLC ("Operating Agreement").
[5] *Id.* at Article 1.10(s), Article 2.2, and p. 21.
[6] *Id.* at Article 2.2.
[7] *Id.* at p. 1.
[8] *Id.* at p. 21.
[9] UST-5.

On June 26, 2025, Debtor filed an Amended List of Equity Security Holders.[10] The Amended List of Equity Security Holders identifies the same equity security holders as the original List of Equity Security Holders with the same shareholder percentage interests, but includes each equity security holder's address and the name of the individual principal of each entity.

Daniel Galvan is the principal of Galvan Capital, LLC ("Galvan Capital"). Alex (also known as Alexandra) Chou is the principal of Happy Investments 168, LLC ("Happy Investments"), and Neerav Jayaswal and Nishant Jayaswal are the principals of 736 Old Las Vegas, LLC ("Old Las Vegas").[11]

On July 11, 2025, Debtor filed a Second Amended List of Equity Security Holders.[12] The Second Amended List of Equity Security Holders identifies the same equity security holders with the same percentage interests, but instead identifies Galvan Capital, Happy Investments, and Old Las Vegas as "Owner(s)" instead of "Shareholders." The other equity security holders remain identified as "Shareholders."[13]

In fact, the equity security holders identified in the List of Equity Security Holders, the Amended List of Equity Security Holders, and the Second Amended List of Equity Security Holders are the members of Monarchy Manager, not Debtor.

Debtor's sole Class B member identified in its Operating Agreement is Monarchy Manager.[14] Debtor has approximately 31 Class A members. The Class A members have not been

---

[10] UST-7.
[11] Id.
[12] UST-10.
[13] Id.
[14] UST-19, p. 21.

3

identified in Debtor's bankruptcy schedules. Ms. Chou and Mr. Galvan have been working with a lawyer in Nevada to obtain the names and addresses of the Class A members of the Debtor.

*The Post-Petition Resolutions*

On June 23, 2025, Debtor filed a Statement Regarding Corporate Resolution.[15] Alexandra Chou "of the limited liability company named as debtor in this case" signed a declaration at the end of the Statement Regarding Corporate Resolution declaring that the foregoing resolutions are true and correct to the best of her knowledge, information, and belief. However, there is no evidence the resolutions were adopted by Debtor or anyone else.

Debtor filed Debtor's Corporate Resolution on June 28, 2025 ("Second Resolution").[16] The Second Resolution is a resolution of Debtor made by Monarchy Manager on its behalf and is signed by the following members of Monarchy Manager: Galvan Capital, Happy Investments, and Old Las Vegas.[17] The Second Resolution states that Section 5.1 and 5.2 of Debtor's Operating Agreement empowers the Debtor's members to vote on actions of the Debtor and to manage the Debtor when no manger has been designated.[18] This is not correct. Section 5.1 of the Debtor's Operating Agreement provides that business and affairs of the Debtor shall be managed by the "Manager" except for matters expressly requiring approval of the members.[19] Section 1.4 of the Debtor's Operating Agreement identifies Monarchy Manager as the "Manager" of the Debtor.[20] The only member identified in the Debtor's Operating Agreement is Monarchy Manager as the sole Class B member with a 60% interest in the Debtor.[21] Class A members are

---

[15] UST-6.
[16] UST-8.
[17] *Id.*
[18] *Id.*
[19] UST-19.
[20] *Id.*
[21] *Id.* at p.21.

"TBD."[22] The Second Resolution also provides that the following individuals are authorized to act on behalf of the Debtor: Alex Chou, Daniel Galvan, Nishant Jayaswal, and Neerav Jayaswal.[23]

On July 11, 2025, Debtor filed Debtor's Corporate Resolution ("Third Resolution"),[24] attaching the following documents: 1) Resolution Pursuant to a Duly Called Special Meeting of the Members of Monarchy Rancheros Manager, LLC ("Resolution of Monarchy Manager"); 2) Meeting Minutes: Special Meeting of the Members of Monarchy Rancheros Manager, LLC ("Minutes of Special Meeting of Monarchy Manager"); and 3) Unanimous Written Consent of the Sole Class B Member and Manager of Monarchy Rancheros de Santa Fe LLC ("Unanimous Consent").[25]

The Resolution of Monarchy Manager acknowledges that its prior legal counsel failed to organize Rancheros Manager with the Nevada Secretary of State.[26] Daniel Galvan, Alexandra Chou, Neerav Jayaswal and Nishant Jayaswal signed the Resolution of Monarchy Manager individually, as managers, and on behalf of their entities as consenting members of Monarchy Manager.[27] The Resolution of Monarchy Manager incorrectly identifies Debtor as "RANCHEROS DE SANTA FE, LLC."[28] The Minutes of Special Meeting of Monarchy Manager, among other things, authorized Hayden Smith to enter an effective date of May 22, 2023, for Debtor's Operating Agreement, and made resolutions regarding legal counsel and bankruptcy matters retroactively effective as of June 5, 2025.[29]

---

[22] *Id.*
[23] UST-8.
[24] UST-11.
[25] *Id.*
[26] *Id.* at p. 3.
[27] *Id.* at p. 5.
[28] *Id.* at p. 3.
[29] *Id.* at p. 10.

The Unanimous Consent has an effective date as of June 5, 2025; it was signed on July 10 and 11, 2025.[30] The Unanimous Consent identifies Manager as the "sole Class B member (and only member of [Debtor] with voting rights) and sole manager of [Debtor.]."[31] It is a unanimous written consent of the Manager of Debtor adopting resolutions on behalf of Debtor. Among other things, the Unanimous Consent 1) authorizes the Debtor to file a voluntary petition for relief under the Bankruptcy Code, 2) authorizes the following individuals to act on behalf of the Debtor: Alexandra Chou, Daniel Galvan, Nishant Jayaswal, and Neerav Jayaswal, and 3) ratifies, confirms, and approves, the actions taken by these individuals on behalf of the Debtor.[32] Alexandra Chou, Daniel Galvan, Nishant Jayaswal, and Neerav Jayaswal electronically signed the Unanimous Consent as "Authorized Signator[ies]" of Monarchy Manager.[33]

As of June 5, 2025, Monarchy Manager had not filed articles of organization with the Nevada Secretary of State. Monarchy Manager was formed as a limited liability company in Nevada on July 10, 2025.[34] No operating agreement for Monarchy Manager was offered into evidence. Nor were Debtor's articles of organization offered into evidence.

Rancheros de Santa Fe, Inc. has a secured claim against Debtor and is owed over 99% of the Debtor's total scheduled obligations.

Daniel Galvan, Alexandra Chou, and Neerav Jayaswal testified at the final hearing on the Motion to Dismiss in support of the Debtor's authority to file bankruptcy. Mr. Galvan is trying his best to understand the organizational structure of the Debtor. His interest in the Debtor is based on Galvan Capital's 31.6% interest in Monarchy Manager. Mr. Galvan, Ms. Chou, and Mr.

---

[30] *Id.* at pp. 15, 18, and 19.
[31] *Id.* at p. 15.
[32] *Id.* at pp 15-16.
[33] *Id.* at p. 17.
[34] UST-20.

Jayaswal believe that Debtor needed to file bankruptcy to protect its interests. Mr. Galvan, Ms. Chou, Mr. Jayaswal and his brother Nishant Jayaswal agreed prior to the filing of Debtor's bankruptcy petition, that Daniel Galvan should sign the Debtor's voluntary petition because his limited liability company, Galvan Capital, had the greatest percentage interest in Monarchy Manager.

DISCUSSION

The United States Trustee asks the Court to dismiss this chapter 11 case because Debtor did not have the authority to commence the case. Debtor argues that it authorized the commencement of this bankruptcy case by corporate resolutions made by its manager, operating as a limited liability company, ratifying Debtor's authority to commence a bankruptcy case as of the petition date. Debtor argues further that if the ratification was ineffective by the manager as a limited liability company because it was not legally organized as an limited liability company on the petition date, then the ratification was effective by the manager acting as a de facto partnership.

For the reasons stated below, the Court concludes that Debtor did not have the authority to commence this bankruptcy case. Consequently, this case should be dismissed.

*Debtor did not have the authority to commence this bankruptcy case*

Authority to file a voluntary bankruptcy petition is determined under state law.[35] If a debtor lacks authority under applicable state law to file a voluntary petition, the Court has no

---

[35] *Price v. Gurney*, 324 U.S. 100, 106 (1945); *In re Franchise Servs. of N. Am. Inc.*, 891 F.3d 198, 206 (5th Cir. 2018) ("State law . . . determines who has the authority to file a voluntary petition on behalf of the corporation."), *as revised* (June 14, 2018); *In re DB Cap. Holdings, LLC*, 463 B.R. 142, *2 (10th Cir. BAP 2010) (unpublished) ("Bankruptcy Courts must look to state law to determine who has authority to commence a bankruptcy case on behalf of a limited liability company . . . organized pursuant to state law." (citing *Price v. Gurney*, 100 U.S. at 106)).

7

choice but to dismiss the bankruptcy case.[36] The UST urges the Court to conclude that under *Price v. Gurney*, ratification can never cure a deficient bankruptcy filing based on the Supreme Court's observation that "[i]t is not enough that those who seek to speak for the corporation may have the right to obtain that authority." *Price*, 100 U.S. at 106.

Many courts have ruled that authority to file a bankruptcy petition can be ratified post-petition, either through a post-petition corporate resolution retroactively authorizing the bankruptcy filing in accordance with local law, or by a party's failure to timely question the debtor's authority to file.[37] In this case, the Court need not decide whether a debtor's authority to file a voluntary bankruptcy petition can be established through ratification. Even if an entity can ratify a bankruptcy case initially filed without the requisite authority, ratification under the circumstances of this case is impossible.

---

[36] *Price v. Gurney*, 324 U.S. at 106 (where the parties do not have the authority under local law to institute the proceeding, the court "has no alternative but to dismiss the petition."); *DB Cap. Holdings*, 463 B.R. at *2 ("A bankruptcy case filed on behalf of an entity without authority under state law to act for that entity is improper and must be dismissed." (citing *In re Real Homes, LLC*, 352 B.R. 221, 225 (Bankr. D. Idaho. 2005))).

[37] *See, e.g., Hager v. Gibson*, 108 F.3d 35, 39 (4th Cir. 1997) (finding that *Price* does not foreclose the possibility of ratification/relation back if the authorization through ratification is possible under local law); *In re Richardson Foods, Inc.*, 659 B.R. 154, 169-71 (Bankr. S.D.N.Y. 2024) (implied ratification was proper under Florida law), *reconsideration denied,* 667 B.R. 500 (Bankr. S.D.N.Y. 2025); *In re Mojo Brands Media, LLC*, No. 6:15-bk-03871-CCJ, 2016 WL 1072508, at *1 (Bankr. M.D. Fla. Mar. 16, 2016) ("If permitted under state law . . . an unauthorized bankruptcy petition filed on behalf of a corporation may be ratified by an entity that had the power to authorize the filing originally, where the entity failed to timely raise the issue of authorization and/or participated in the bankruptcy proceeding."); *In re Alternate Fuels, Inc.*, No. 09-20173, 2010 WL 4866690, at *13 (Bankr. D. Kan. Nov. 23, 2010) (finding that disputed sole shareholder's failure to object to allegedly unauthorized bankruptcy filing for five months ratified the filing); *In re Sterling Mining Co.*, No. 09-20178-TLM, 2009 WL 2475302, at *8 (Bankr. D. Idaho Aug. 11, 2009) (silence by all but one shareholder and acquiescence by the only objecting equity security holder constituted waiver or ratification of unauthorized bankruptcy filing); *In re Reliable Air, Inc.*, No. 05-85627, 2007 WL 7136475, at *4-*5 (Bankr. N.D. Ga. Mar. 9, 2007) (implied ratification of unauthorized bankruptcy filing consistent with Georgia law by failing to object to the unauthorized filing for eleven months, yet participating and accepting the benefits of the bankruptcy filing); *Wynco Distribs., Inc. v. Wynn (In re Wynco Distribs., Inc.)*, 126 B.R. 131, 132 (Bankr. D. Mass. 1991) (acknowledging authorization of bankruptcy filing through ratification by current board of directors), *aff'd,* 48 F.3d 1211 (1st Cir. 1995).

8

In *In re Sacramento Mini Storage*, 112 F.3d 517 (9th Cir. 1997) (unpublished), the Ninth Circuit concluded that ratification of the debtor's bankruptcy filing would have been ineffective, because at all relevant times, the ratifying entity's corporate powers and privileges had been suspended under California law. The circumstances of this case are similar.

To ratify the filing of a bankruptcy petition through a post-petition resolution, the ratifying parties must have had the authority under applicable state law to authorize the filing of the bankruptcy petition by the debtor at the time of filing. *See Hager*, 108 F.3d at 40 (applying Virginia law, and concluding that "the unauthorized filing of a voluntary petition in bankruptcy [o]n behalf of a corporation might be ratified in appropriate circumstances by ensuing conduct of persons *with power to have authorized it originally*.") (emphasis added).

Monarchy Manager did not have the authority under Nevada law to file a voluntary petition on behalf of Debtor on June 5, 2025, because Monarchy Manager had not been properly formed as of June 5, 2025. Monarchy Manager was not legally organized as a limited liability company until July 10, 2025, when it filed its articles of organization with the Nevada Secretary of State.[38] Consequently, Monarchy Manager's attempt at retroactive ratification of the Debtor's bankruptcy filing to a date that Monarchy Manager was not legally organized as a limited liability company fails.

Debtor asserts that the failure of Monarchy Manager to organize as a limited liability company means that Monarchy Manager's structure defaults to a partnership such that it could

---

[38] *See* Nev. Rev. Stat. Ann. 86.201 ("A limited -liability company is considered legally organized pursuant to this chapter: (a) At the time of the filing of the articles or organization with the Secretary of State; and (b) Upon paying the required filing fees to the Secretary of State."); *see also* Nev. Rev. Stat. Ann. 86.061 ("'Limited-liability company' or 'company' means a limited-liability company organized by filing articles of organization with the Secretary of State and existing under this chapter, including a restricted limited-liability company."); Nev. Rev. Stat. Ann. 86.151(1) ("One or more persons may form a limited-liability company by signing and filing with the Secretary of State articles of organization for the company.").

9

nevertheless act on behalf of Debtor. Under Nevada law decisions of a general partnership made outside the usual carrying on of business must be agreed by the unanimous consent of the partners.[39] Authorizing the commencement of chapter 11 case is not ordinary partnership business. *Cf. In re Avalon Hotel Partners, LLC*, 302 B.R. 377, 380 (Bankr. Or. 2003) (applying Oregon law and concluding that authorizing the filing of a chapter 11 petition for a limited liability company "is a decision outside the ordinary course of business.").

None of the resolutions of Monarchy Manager offered to establish its authority to file Debtor's bankruptcy petition were approved by all of its members/de facto general partners (as identified in Debtor's Third List of Equity Security Holders). Further, all of the resolutions, meeting minutes, and Unanimous Consent assume that Monarchy Manager is acting as a limited liability company, not a partnership. Debtor's partnership argument thus fails.

*Dismissal under § 1112(b)*

Because Debtor cannot demonstrate that it had the authority to file a bankruptcy case on June 5, 2025, this bankruptcy case must be dismissed. Lack of authority to file bankruptcy constitutes "cause" to dismiss or convert under 11 U.S.C. § 1112(b). *In re Georgian Backyard LLC*, 661 B.R. 102, 105 (Bankr. E.D.N.Y. 2024) ("The lack of authority to file a voluntary chapter 11 petition by the party filing it constitutes . . . 'cause' for relief under § 1112(b) of the Bankruptcy Code." (quoting *In re 167 W. 133rd St. Hous. Dev. Fund Corp.*, No. 18-12043 (JLG), 2018 WL 4637460, at *6 (Bankr. S.D.N.Y. Sept. 25, 2018))). Once "cause" has been shown, the Court must determine whether dismissal or conversion is in the best interests of creditors and the

---

[39] *See* Nev. Rev. Stat. Ann. 87.090(2) ("An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners."); Nev. Rev. Stat. Ann. 87.090(3)(c) ("[U]nless authorized by the other partners or unless they have abandoned the business, one or more but less than all the partners have no authority to . . . [d]o any other act which would make it impossible to carry on the ordinary business of a partnership.").

10

bankruptcy estate. *See In re Trinity Legacy Consortium, LLC*, No. 22-10973-j11, 2025 WL 1871021, at *5 (Bankr. D.N.M. July 7, 2025) ("Dismissal or conversion under § 1112(b) 'requires a two-step process in which the court first determines whether there is 'cause' to convert or dismiss, and next chooses between conversion and dismissal based on the 'best interest[s] of creditors and the estate.'" (quoting *In re Am. Cap. Equip. LLC*, 688 F.3d 145, 161 (3d Cir. 2012) (quoting § 1112(b))).

      Here, dismissal, rather than conversion, is required. Monarchy Manager was not legally organized as a limited liability company under Nevada law as of June 5, 2025, when Debtor commenced this bankruptcy case. Consequently, Monarchy Manager could not have authorized Debtor to file bankruptcy on the petition date and cannot ratify the commencement of the case as of a time Monarchy Manager was not legally organized. Thus, conversion to chapter 7 is not possible because the only entity with the power to place Debtor in bankruptcy under Debtor's Operating Agreement, which purports to grant Monarchy Manager the sole right to manage, vote, or take any action on behalf of Debtor, did not exist on the petition date, and the evidence does not establish that anyone other than Monarchy Manager could have authorized Debtor's commencement of a bankruptcy case.

      If the Debtor's Operating Agreement is defective, determining who had the power to authorize Debtor's bankruptcy filing on the petition date becomes even more complicated. Would all of the Debtor's limited liability members (including the members of Monarchy Manger acting as a partnership) have had to vote to authorize the Debtor's bankruptcy filing? All Class A members of the Debtor have not even been identified in the Debtor's bankruptcy schedules.

Debtor's articles of organization, which may designate a manager and define the authority of Debtor's members, were not offered into evidence. *See* Nev. Rev. Stat. Ann. 86.161 ("The articles of organization must set forth . . . [i]f the company is to be managed by . . . [o]ne or more managers . . . or [t]he members"). Pursuant to Nev. Rev. Stat. Ann. 86.291(1), "management of a limited-liability company is vested in its members proportionally in interest thereof" except as may otherwise be provided in the articles of organization or the operating agreement. The only evidence of the proportional membership interests of the Debtor is its undated Operating Agreement, which identifies Rancheros Manager as the sole Class B member, holding 60% of the membership interests.

Ultimately, it is unclear from the evidence which members of Debtor would have had the authority to authorize Debtor's filing of a voluntary petition for relief under the Bankruptcy Code on June 5, 2025. What is clear is that Daniel Galvan did not have that authority on June 5, 2025, and that Debtor's subsequent efforts to demonstrate its authority to file bankruptcy as of the petition date have failed.

Dismissal will afford the Debtor the opportunity to document and fix its organizational structure in order to move forward, whether by filing another bankruptcy case, or otherwise. Debtor's major creditor, Rancheros de Santa Fe, Inc., will not be prejudiced by dismissal. Unless another bankruptcy case is filed, or a settlement is reached, it will simply continue with its foreclosure efforts. Debtor has few other creditors. And although its current bankruptcy counsel likely has unpaid legal fees, dismissal with the possibility of re-filing should not result in much greater legal fees than otherwise would have been incurred had Debtor withstood the Motion to Dismiss. Debtor's current counsel is now familiar with the facts necessary to complete bankruptcy schedules and related documents if Debtor decides to re-file.

*Conclusion*

Because Debtor did not have the authority to commence a bankruptcy case when this case was commenced, and cannot ratify the case commencement, the Court will dismiss this chapter 11 case by entry of a separate order.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: August 4, 2025

COPY TO:

Marcus Anthony Sedillo
Attorney for Debtor
Gatton & Associates
10400 Academy Rd. NE, Suite 350
Albuquerque, NM 87111

Daniel White
DOJ-Ust
PO Box 608
Albuquerque, NM 87103-0608

Kathleen T. Ahghar
Attorney for Rancheros de Santa Fe, Inc.
Moses Law Firm
612 First Street NW
Albuquerque, NM 87102